CHARLES D. AMMON AND EMAH B. AMMON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE CUSHMAN MOTOR WORKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 96334, 96335, 96336. Promulgated August 29, 1941.

*Thomas S. Allen, Esq.*, and *Harold J. Requartte, Esq.*, for the petitioners.

*Angus R. Shannon, Jr., Esq.*, for the respondent.

OPINION.

TURNER: We are here concerned only with that portion of Motor Works property purchased by Ammon at the sheriff's sale on May 16, 1934, and thereafter transferred to Cushman under the contract of August 22, 1934, and our question is whether or not the said property was acquired by Cushman from Motor Works pursuant to a plan of reorganization as the term "reorganization" is defined in section 112 (g) (1) of the Revenue Act of 1934. If so, the property in question retained the same basis in the hands of Cushman as it had in the hands of Motor Works. Sec. 113.

Counsel for petitioners have refused to rest their claim of reorganization on any specific definition of that term, but claim that the transaction or transactions fall within one or all of the provi-. sions of section 112 (g) (1) (B) to (E), inclusive.[1] They argue that either the stockholders of Motor Works exchanged their stock for the stock of Cushman under section 112 (b) (3) of the act,[2] or that Motor Works exchanged its property, including the property purchased by Ammon at the sheriff's sale, solely for stock and securities of Cushman under section 112 (b) (4).[3]

The respondent, to the contrary, contends that the property in question was not acquired by Cushman from Motor Works pursuant to a plan of reorganization, but that Ammon acquired it by purchase at the sheriff's sale and that he or the Cushman Corporation transferred the property to Cushman upon its organization and that the

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \*

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

(1) The term "reorganization" means \* \* \* (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock; of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation; or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected.

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

[3] (4) SAME—GAIN OF CORPORATION.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

basis for such property in the hands of Cushman is the price paid by Ammon therefor.

The facts show that Motor Works had been dissolved some 17 months before the organization of Cushman and the acquisition by it of the property with which we are concerned and the rule generally is that the dissolution of a corporation ends its existence for all purposes unless by statute the life of the corporation is extended for the purpose of winding up its affairs. See the discussions with respect to the existence of corporations in *Pio Crespi*, 44 B. T. A. 990; *Weber Flour Mills Co.*, 32 B. T. A. 181; affd., 82 Fed. (2d) 764; and *George Wiedemann Brewing Co.*, 4 B. T. A. 664. Motor Works was a Nebraska corporation and we find nothing in the Nebraska statutes extending the life of a corporation beyond the date of its dissolution. The Nebraska statute provides that upon dissolution the directors or managers of the affairs of the corporation become trustees for the creditors and stockholders, and as such have authority to use the name of the corporation in winding up its affairs and to institute and defend suits necessary thereto, but there is no extension of corporate life.[4]

It is claimed by the petitioners, however, that the dissolution of Motor Works was a part of a plan for its reorganization. A plan for the reorganization of Motor Works had been proposed by Ammon in December 1932, but had been opposed by a number of stockholders on the ground that the stockholders would realize more through the sale of the business as a going concern than through reorganization, and at the annual meeting on January 9, 1933, Fred D. Stone had been instructed to look for a buyer for "the complete assets and business" of the corporation. At the same meeting Ammon had been named chairman of a committee to consider further the idea of reorganization. At or prior to the adjourned meeting of the

---

[4] 24–107. *Same, Dissolved, Affairs How Settled.* Upon the dissolution, by the expiration of the term of its charter, or otherwise, of any corporation now existing, or hereafter created, and unless other persons be appointed by the legislature, or by some court of competent authority, the directors or managers of the affairs of such corporations, acting last before the time of its dissolution, by whatever name they may be known in law, and the survivors of them, shall be the trustees of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the same, collect and to pay outstanding debts, and divide among the stockholders the moneys and property that shall remain, in proportion to the stock of each stockholder paid up, after the payment of debts and necessary expenses; and the persons so constituted trustees shall have authority to sue for and recover the debts and property of the dissolved corporation, by the name of the trustees of such corporation, describing it by its corporate name, and shall be jointly and severally responsible to the creditors and stockholders of such corporation, to the extent of its property and effects that shall come into their hands; and no suit against any such corporation shall abate in consequence of such dissolution, and said trustees may be made parties by *scire facias*; and all liens of judgments and decrees of any courts of equity, existing at the time of such dissolution, either in favor of or against such corporation, shall continue in force in the same manner as if such dissolution had not taken place: * * *

stockholders on February 13 following, Stone had reported that no buyer for the "complete business" had been found, and Ammon reported that no reorganization had been worked out. The plan as proposed had contemplated the consolidation or merger of Motor Works, the Easy Manufacturing Co., and the McGrew Machine Co., but, as the result of litigation and disputes within Motor Works, the McGrew Machine Co. withdrew from participation in any plan or plans of reorganization. By February 25, 1933, the situation was such that some action with respect to Motor Works was considered essential, and a special meeting of its stockholders was called for March 6, the declared purpose being that of either reorganizing and raising at least $65,000 in cash, or of dissolving and liquidating. At the meeting so called the action taken was that of dissolution and there is nothing in the resolution of dissolution indicating that the dissolution was pursuant or in any way related to an existing plan of reorganization or that the stockholders, in taking such action, had any thought of reorganizing. The directors were instructed to sell the assets, wind up the business, and make distribution to the stockholders. There was some testimony by Ammon to the effect that his attorneys had advised him that the merger could best be accomplished through the dissolution of Motor Works, but in that connection the record shows that the resolution of dissolution adopted at the stockholders' meeting of March 6, 1933, was prepared by Ammon's attorneys and the letter from them transmitting the resolution to Ammon stated that they favored the selling of the property under Ammon's judgment "rather than at dissolution sale." Nevertheless the stockholders voted dissolution.

There seems to be no question that Ammon at all times hoped for and preferred the continuation of the business of Motor Works in a new corporation rather than dissolution and liquidation. The facts show however that this preference of Ammon's remained a hope only and did not take definite shape or become a reality until long after Motor Works had ceased to exist and then only after efforts to sell the assets and business had failed, efforts in which Ammon himself had joined. It was not until these things had occurred, until judgment on Ammon's stock redemption suit had been reentered on August 1, 1933, the receivership proceedings had been dismissed in February of 1934, and the sheriff's sale had been held on May 16, 1934, that those who had been stockholders of Motor Works voted on June 15, 1934, to organize a new corporation to acquire the assets and business previously owned and operated by Motor Works. While the interests to be received by the former stockholders of Motor Works were substantially, if not exactly, the same as that which had originally been proposed by Ammon, the new corporation was different. His original proposition

had contemplated the inclusion of the Easy Manufacturing Co. and the McGrew Machine Co. The new corporation as determined upon at June 15, 1934, included only the assets and business which had formerly belonged to Motor Works.

With respect to the applicability of the reorganization provisions of the revenue act, the situation here is very comparable to that dealt with in *Huey & Philp Hardware Co.*, 40 B. T. A. 781, and much that was said there is equally applicable here. When the plan which resulted in the organization of Cushman was finally agreed upon Motor Works had long since ceased to exist and it was not a party to any reorganization to which Cushman was or might have been a party. Accordingly Cushman did not acquire any assets from Motor Works under or pursuant to a plan of reorganization and the assets with which we are here concerned did not carry with them into the hands of Cushman the basis for gain or loss and depreciation which they had in the hands of Motor Works. Cf. *Pio Crespi, supra.*

In view of the conclusion reached above, it becomes unnecessary to consider whether Ammon's purchase of assets at the sheriff's sale should be treated as a purchase for his benefit, as the respondent contends, or whether he was merely acting for all Motor Works stockholders, as petitioners contend. The respondent in his determination of deficiency against Cushman has used $16,146.76 as the basis for the assets in question. We are not advised as to their fair market value when Motor Works was dissolved and they came into the hands of the Motor Works directors as trustees for the stockholders and creditors and, except possibly for some information as to the amounts at which they were carried on the Motor Works books and later entered on the Cushman books, the only information we have as to value or cost is their selling price at the sheriff's sale and the stipulation of the parties that at the date of the sheriff's sale their fair market value was $16,146.76. There is nothing to show that the correct basis is different from that used by the respondent and his determination with respect thereto is accordingly sustained.

Having determined that there was no reorganization to which Motor Works was a party within the meaning of the statute, deficiencies will be entered in the cases of Charles D. Ammon and Emah B. Ammon, husband and wife, and the Estate of John F. Ammon in the amounts as stipulated by the parties at the hearing.

> *Decisions in Docket Nos. 96334 and 96335 will be entered in the amounts as stipulated. Decision in Docket No. 96336 will be entered under Rule 50.*